Roy BORGERSEN, Libelant,

v.

SKIBS, A/S ABU in a cause of action for personal injuries civil and maritime, Respondent,

and

Sigurd Golten Machine Corporation, Respondent-Impleaded.

No. 19980.

United States District Court
E. D. New York.

July 8, 1957.

O'Connor & Randolph, New York City, for libelant, by Anthony J. Randolph and Edward L. P. O'Connor, New York City, Advocates.

Haight, Gardner, Poor & Havens, New York City, for respondent, by J. Ward O'Neill and Robert M. Julian, New York City, Advocates.

Alexander, Ash & Schwartz, New York City, for respondent-impleaded, by Edward Ash, New York City, Advocate.

BYERS, District Judge.

The libel (filed December 16, 1952) has to do with an injury said to have been sustained by the libelant on the respondent's M. V. Iselin on May 22, 1951, when he was working in the engine room at about 11:30 p.m. of that day. He was employed by the impleaded respondent Golten as a helper engine repairman; he asserts that while stripping the No. 1 piston, getting it ready for the main repair crew to work on, he was reaching into the cylinder to loosen certain lock-nuts, when he slipped and fell some five or six feet into the drainage pit under the cylinder, struck his head and sustained a concussion.

He accuses the ship of unseaworthiness in that there was oil on the deck plates on which he was standing; and that there was no portable light supplied to him, although he says he requested one, from a ship's engineer.

There was an overhead electric light, some six feet above and four or five feet back of him. He says this was "kind of a dim kind." That it was shining down and he "couldn't see everything that was down by" him.

However he was able to see the deck plate on which he was standing.

The libelant's brief candidly states that "the illumination of the engine room in general is not here in issue."

Thus it is the alleged lack of portable hand lights upon which this particular assertion of unseaworthiness rests. Such lights were necessary to enable a man to work inside the cylinder, and it is so found, based upon the testimony of Ereksen, the snapper of the gang with which libelant was working.

The latter said that there were four or six such lights provided. That libelant did not ask Ereksen for such a light, although that would seem to be the natural thing for him to do, if he was in need of it.

His precise task as he describes it, at the time of his fall, was the use of pliers to pull wire off or through the lock-nut; he then tapped it, and took it off with a wrench. Seemingly that operation exposed the holding nut.

Being asked if he was required to exert much strength he said that the wire was heavy and sometimes bent.

He had removed one or two of such nuts before he fell, even though he was working as he says, without a portable light.

Apparently it was the reaching over to other nuts on the opposite side of the cylinder that preceded the fall. How that reaching could have been avoided by the presence of a portable light, has not been made to appear. Ereksen said that only two or three such lights were needed.

Based upon the deposition of Fornes, and the testimony of Ereksen, it is found that the ship was equipped with a sufficient number of portable lights for the use of a gang employed in repairs to the engines, and in this respect the M. V. Iselin was not unseaworthy.

For work inside the cylinder the men were provided with planks upon which to stand, but the libelant did not make use of one, because—as he explained—he alone was working; he says it would have been proper to use the plank if the whole gang had been there.

The planks, according to the deposition of Fornes, the chief engineer of the ship, and the testimony of Ereksen, were needed to be put in place to enable men to reach the nuts, which they could not do, by standing on the floor plates. Thus it was the libelant's election to try to reach the lock-nuts without the aid of planks, that caused him to overreach, and so lose his balance; that was the true cause of the fall which he said took place, not the alleged failure of the ship to provide him with a portable light.

It should be said in parenthesis, that the libelant's recital is the basis of the foregoing, without reference to possible questions of its accuracy, suggested by the testimony of Ereksen and Fornes.

Turning to the question of the presence of oil upon the deck plates adjacent to the No. 1 piston, the libelant testified that he could see and knew of the presence of a film of oil, and that rags were supplied to him to wipe that oil away; that he had done so around 11:00 o'clock, and then his supply of rags was used up. He does not say that he asked his foreman (Ereksen) for an additional supply. He had taken off the door or doors of the casing or housing of the cylinder (see Respondent's Exhibit 2), in order to obtain access to the interior. This he says was at about 4:00 p.m. on that day.

He says he put the door or doors to his left. This means that he placed it or them in such a position that the oil which was on the interior side, dripped "down to the place where he was going to work" i.e. to stand.

He did not at once clean the deck plates, but said that he did so at about 11:00

o'clock, and that the space was then fairly clean.

This means either that he removed the oil film which he had observed, and therefore its presence did not cause the fall which he said took place; or he did not do the cleaning up which was part of his job, and therefore slipped as he stood on the deck plates near the cylinder, shown in Respondent's Exhibit 1.

In neither case can it be seen that the ship was unseaworthy, or failed to provide him with a safe place to work, i.e., it was his own omission, not that of the ship, which explains the happening if there was one.

No one has attempted to argue that the engine room deck plates of a ship are expected to be free from oil; certainly an accumulation thereof is about all that reasonable care can prevent.

It is found that the ship is not shown to have been unseaworthy in either respect asserted by libelant; and that it was not at fault for having failed to provide him with a safe place to work.

As to the fact of the libelant's fall, Ereksen testified that he received no report of it from libelant. This seems to be an important aspect of the case.

The libelant received compensation and medical expenses in the total sum of $1,200.31, and has offered no proof of more than expectable injury from a concussion such as he describes.

There has been no demonstration of a loss of earning capacity traceable to the injury, for he has been constantly employed since November 1951.

On May 22, 1951 he took such jobs as came to him in shape-up, so that his earnings were fluctuating, and he cannot be thought of as having an assured earning status as a regular employee, which was lost to him under the circumstances related.

The libel is dismissed, without costs, for failure of proof. The impleading petition is also dismissed.

Settle decree.